**RUSHOVICH MEHTANI LLP**
AANAND GHODS-MEHTANI (SBN 254556)
LISA M. WATANABE-PEAGLER (SBN 258182)
COLIN RUSHOVICH (SBN 292091)
5900 Wilshire Blvd., Suite 2600
Los Angeles, California 90036-5013
Telephone: 323-330-0543
Facsimile: 323-395-5507
amehtani@rmlawpartners.com
lwatanabe@rmlawpartners.com
crushovich@rmlawpartners.com

Attorneys for Plaintiff
JOSE VENTURA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JOSE VENTURA, an individual<br><br>Plaintiff,<br><br>vs.<br><br>LOS ANGELES COUNTY OFFICE OF EDUCATION; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **RETALIATION IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3730;**<br><br>2. **RETALIATION IN VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, GOVERNMENT CODE SECTION § 12653;**<br><br>3. **RETALIATION IN VIOLATION OF CALIFORNIA LABOR CODE § 1102.5**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMPLAINT FOR DAMAGES

Plaintiff Jose Ventura ("Plaintiff") alleges on knowledge as to himself and his known acts, and on information and belief as to all other matters, as follows:

## I.

## PARTIES

1.      Defendant Los Angeles County Office of Education ("LACOE") is a public entity conducting business in Los Angeles County, with its principal place of business in Los Angeles County.

2.      At the relevant times mentioned herein, Plaintiff was employed by LACOE to perform work for LACOE within Los Angeles County.  The unlawful conduct alleged herein occurred in Los Angeles County.  Plaintiff is, and at the relevant times mentioned herein was, a resident of Los Angeles County.

3.      At the relevant times mentioned herein, LACOE and each DOE defendant was an agent, employee and/or partner of the remaining defendants, including the DOE defendants, and, in doing these things herein alleged, was acting within the scope of such agency, employment and/or partnership with the permission, authority and/or consent of his or her co-defendants.

4.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when the same has been ascertained.  Each of the fictitiously named defendants is responsible in some manner for the acts complained of herein.  Unless otherwise stated, all references to named defendants shall include DOE defendants as well.

## II.

## JURISDICTION AND VENUE

5.      Federal jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises, in part, under the laws of the United States, including, without limitation,

COMPLAINT FOR DAMAGES

under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*.  Supplemental jurisdiction also exists for the related state law claims that are predicated on the same facts as the federal claims pursuant to 28 U.S.C. § 1367 and Federal Rules of Civil Procedure 18(a).

6.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events on which the claim is based occurred in the Central District of California.

## III.

## FACTUAL ALLEGATIONS

7.     The LACOE is a public agency that provides academic and financial support to schools throughout the County of Los Angeles.  The LACOE's Division of Student Support Services ("SSS Division") offers a wide range of programs and resources to school and district personnel, students and families on issues and concerns related to, *inter alia*, student health and substance abuse.

8.     Plaintiff commenced his employment with the LACOE in or around mid-February 2013.  Plaintiff was a Program Activities Specialist for the Comprehensive Prevention Services ("CPS") Unit of the LACOE's SSS Division.  The CPS Unit plans and implements specific programs related to substance abuse prevention to youth at various schools.  For example, the Life Skills Training Program ("LST Program") offers courses to youth on the social and psychological factors that promote the initiation of substance use and other risky behaviors in order to prevent alcohol, tobacco and marijuana use.  The CPS Unit also oversees the Model Code Program that conducts meetings and training sessions with school administrators and youth to address alcohol and other drug-related issues.

9.     The CPS Unit offers its programs and services pursuant to an agreement with the Substance Abuse and Prevention Control Program of the County of Los Angeles' Department of Public Health ("SAPC").  As part of the agreement to maintain funding through federal and state grants, including, but not limited to, funds from the federal

COMPLAINT FOR DAMAGES

Substance Abuse and Mental Health Services Administration, the CPS submits a Work Plan to the SAPC that contains details (start and end dates, number of planning hours, estimated number of people served, service location, etc.) regarding each program or service that will be offered each year.  The CPS Unit is expected to comply with the details set forth in the Work Plan, and there are audits conducted periodically to ensure its compliance.

10.   Throughout his employment, Plaintiff's direct supervisor was Monica Sanchez ("Sanchez"), the LACOE's Project Coordinator for the CPS Unit.  At the start of Plaintiff's employment, he learned that the CPS Unit had failed to fully complete its LST and Model Code Programs during the fall of 2012 in accordance with the Work Plan. Therefore, Plaintiff proposed to Sanchez that he informally conduct some LST Program courses during the summer of 2013 and she agreed.

11.   During the summer of 2013, Plaintiff taught several LST Program courses. Sanchez expressed her concerns to Plaintiff that the CPS Unit had not completed enough hours of the Model Code Program in accordance with the Work Plan.  Therefore, Sanchez directed Plaintiff to classify some of his hours teaching LST Program courses as hours worked on the Model Code Program.  Plaintiff refused to carry out Sanchez's directive.

12.   In or around June or July 2013, pursuant to Sanchez's request, Plaintiff gave Sanchez records showing the dates and locations of where he taught LST Program courses that summer.  Plaintiff had not obtained any signatures from students who attended these courses because they were summer courses that were not part of the Work Plan.  Sanchez then insisted that Plaintiff obtain all of the students' signatures for each course.  However, the only way to obtain such signatures was through forgery.  Plaintiff refused to do so. Plaintiff told Sanchez he would not forge the signatures because it was improper and fraudulent.  Sanchez then said "just give it to the student workers, they know what to do, they've done it before" (or words of similar import).

COMPLAINT FOR DAMAGES

13.     In or around January 2014, Sanchez told Plaintiff about an upcoming audit. Sanchez informed Plaintiff that the auditors would scrutinize any attendance records with less than requisite number of student signatures.  Plaintiff informed Sanchez that the attendance in many of his classes had dropped below the required number of students. Sanchez then told Plaintiff that he needed to obtain more signatures to reflect a higher attendance rate.  Plaintiff refused to forge any signatures and told Sanchez that it amounted to potential fraud against the government.  Sanchez warned Plaintiff that if he failed to report a higher attendance, the programs (and therefore his job and livelihood) would be at risk.  Plaintiff refused to engage in what he believed to be unlawful activity despite Sanchez's repeated pleas.

14.     On or about this time, Plaintiff started investigating the reasons behind Sanchez's directives to record higher attendance rates.  Based on his review of the Work Plans and the LACOE's agreement with SAPC, Plaintiff believed Sanchez was reporting false attendance numbers to the SAPC in order to secure the state and federal grant funds.

15.     On or about January 15, 2014, Sanchez once again instructed Plaintiff to falsify his attendance records to reflect a higher attendance rate.  Plaintiff refused to do so.

16.     Shortly thereafter, on January 17, 2014, Plaintiff received a negative performance evaluation that were based on untrue and/or false representations about his performance.  This was a surprise because Plaintiff had previously received positive performance evaluations from Tony Santilena, another supervisor, in May 2013 and from Sanchez in October 2013.  Indeed, up until this date, Plaintiff had not received any verbal or written warnings or other criticisms about his work performance.  That very same day, the LACOE terminated Plaintiff's employment.  Plaintiff's termination occurred about a week before the scheduled audit of the LACOE's programs.

17.     In or around March 2014, Plaintiff attended an appeal hearing before the LACOE's Board of Commissioners (the "LACOE Commissioners").  During the hearing,

Plaintiff disclosed his beliefs that Sanchez and the CPS Unit were committing fraud by submitting false claims to SAPC to obtain the necessary state and federal funds.  Shortly thereafter, the LACOE Commissioners deliberated, and decided not to reinstate Plaintiff.

18.    To this date, the LACOE has not contacted Plaintiff regarding any investigation into the matters he raised at the appeal hearing.

19.    Plaintiff alleges his termination and the LACOE's refusal to reinstate his employment was motivated by his refusal to participate in, and his investigation and disclosure of, the LACOE's fraudulent reporting practices, including, without limitation, the falsifying of attendance records tethered to federal and state funds.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.    On July 1, 2014, as a prerequisite to maintaining Plaintiff's related state claims against a public entity under the California Tort Claims Act, California Government Code sections 945.4 and 911.2(a), Plaintiff provided written notice to the LACOE indicating the theories of liability and underlying facts explaining how LACOE harmed Plaintiff.  Plaintiff received a response from the LACOE dated August 13, 2014, informing him that LACOE rejected his claim.  A true and correct copy of LACOE's response is attached hereto collectively as **Exhibit A**.

## V.

## FIRST CAUSE OF ACTION

### (Retaliation in Violation of Federal False Claims Act)

### (Against all Defendants)

21.    Plaintiff realleges and incorporates by reference paragraphs 1-20, inclusive, of this Complaint as though fully set forth herein.

22.    31 U.S.C. Section 3730, subsection (h), of the Federal False Claims Act states that an employee may seek relief if he or she is discharged "because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to

COMPLAINT FOR DAMAGES

stop 1 or more violations of this subchapter."  Subsection (h)(2) states that relief "shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees."  Claims brought pursuant to section 3730(h) are not dependent on a plaintiff's ability to succeed on, or even file, a claim under section 3729.  *See U.S. ex rel. Satalich v. City of Los Angeles ("Satalich")*, 160 F.Supp.2d 1092, 1095 (C.D. Cal. 2001)  (citing *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) (holding that in order to engage in protected activity under section 3730(h), a plaintiff must only "investigate … matters which were calculated, or reasonably could lead to a viable [Federal Claims Act] action.")).

23.    As explained above in paragraphs 7 through 19, Plaintiff reasonably believed that the LACOE was submitting false claims to the SAPC in violation of the Federal False Claims Act.  *See* 31 U.S.C. § 3729 (prohibiting anyone from knowingly presenting, or causing to present, a false or fraudulent claim for payment or approval).  Plaintiff refused to participate in the unlawful activity and then engaged in protected activity by investigating and disclosing the unlawful activity to LACOE and its Commissioners.  The LACOE not only discriminated against and terminated Plaintiff's employment in retaliation for his protected activity, it refused to reinstate Plaintiff's employment after an appeals hearing wherein Plaintiff disclosed the unlawful activity again to the LACOE Commissioners.

24.    Plaintiff is entitled to all relief necessary to make him whole, including reinstatement with the same seniority to the position he had before the unlawful termination, two (2) times the amount of back pay lost, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination and retaliation.  *See Satalich*, 160 F.Supp.2d at 1095 (stating that recovery of two times the

COMPLAINT FOR DAMAGES

amount of back pay is compensatory, and not punitive in nature, therefore the claim could proceed against city employer).

25.     As a proximate result of the conduct of the LACOE, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

26.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VI.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of California False Claims Act)

### (Against all Defendants)

27.     Plaintiff realleges and incorporates by reference paragraphs 1-26, inclusive, of this Complaint as though fully set forth herein.

28.     California Government Code section 12653, subsection (a), of California's False Claims act also provides relief to any employee who is discharged "because of lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this article."  Section 12653, subsection (b), states that relief "shall include reinstatement with the same seniority status that the employee, contractor, or agent would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, and where appropriate, punitive damages.  The defendant shall also be required to pay litigation costs and reasonable attorneys' fees."  *See also, infra*, ¶ 22; *State ex rel. Bowen v. Bank of America Corp.*, 126 Cal.App.4th 225 (stating federal decisions are persuasive in interpreting the California False Claims Act).

COMPLAINT FOR DAMAGES

29.     As explained above in paragraphs 7 through 19, Plaintiff reasonably believed that the LACOE was submitting false claims to the SAPC in violation of the California False Claims Act.  *See* Govt. Code § 12651 (prohibiting anyone from knowingly presenting, or causing to present, a false or fraudulent claim for payment or approval). Plaintiff refused to participate in the unlawful activity and then engaged in protected activity by investigating and disclosing the unlawful activity to LACOE and its Commissioners.  The LACOE not only discriminated against and terminated Plaintiff's employment in retaliation for his protected activity, it refused to reinstate Plaintiff's employment after an appeals hearing wherein Plaintiff disclosed the unlawful activity again to the LACOE Commissioners.

30.     Plaintiff is entitled to relief necessary to make him whole, including reinstatement with the same seniority to the position he had before the unlawful termination, two (2) times the amount of back pay lost, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination.

31.     As a proximate result of the conduct of the LACOE, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

32.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

# VII.

## THIRD CAUSE OF ACTION

### (Retaliation in Violation of California Labor Code Section 1102.5)

### (Against all Defendants)

33.    Plaintiff realleges and incorporates by reference paragraphs 1-32 inclusive, of this Complaint as though fully set forth herein.

34.    Employers are required by California Labor Code section 1102.5 to not retaliate against an employee "for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Labor Code § 1102.5(c).

35.    As explained above in paragraphs 7 through 19, the LACOE knowingly and intentionally violated Labor Code section 1102.5 by terminating Plaintiff's employment in retaliation for his refusal to participate in activities that he reasonably believed were in violation of state or federal statutes.  Moreover, the LACOE refused to reinstate Plaintiff's employment after the appeal hearing in retaliation for his refusal to participate in activities that he reasonably believed were in violation of state or federal statutes.

36.    As a proximate result of the conduct of the LACOE, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including, nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial.

37.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

# VIII.

## PRAYER FOR RELIEF

### (As to All Causes of Action)

1.    For general damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

2.    For special damages, according to proof on each cause of action for which such damages are available.

3.    For compensatory damages, including emotional distress damages, according to proof on each cause of action for which such damages are available.

4.    For declaratory and injunctive relief as appropriate.

5.    For prejudgment interest and post-judgment interest according to law.

6.    For costs of suit incurred in this action.

As to the First Cause of Action

7.    For reinstatement with same seniority to the position he had before the unlawful termination, two (2) times the amount of back pay lost, interest on the back pay and compensation for any special damages sustained as a result of the discrimination and retaliation pursuant to 31 U.S.C. § 3730(h)(2).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

- 11 -

COMPLAINT FOR DAMAGES

As to the Second Cause of Action

8.     For reinstatement with the same seniority status that the employee had but for the discrimination, two (2) times the amount of back pay, interest on the back pay, compensation for any special damages sustained as a result of the discrimination, costs and reasonable attorneys' fees pursuant to Government Code section 12653(b).

9.     For such other and further relief as the Court deems proper and just.

Dated:  February 11, 2015          RUSHOVICH MEHTANI LLP

                                   By: __/s/ Lisa M. Watanabe-Peagler_____
                                       AANAND GHODS-MEHTANI
                                       LISA WATANABE-PEAGLER
                                       COLIN RUSHOVICH

                                   Attorneys for Plaintiff JOSE VENTURA

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Plaintiff Jose Ventura hereby demands a trial by jury on all causes of action alleged herein in the Complaint for Damages.


Dated:  February 11, 2015          RUSHOVICH MEHTANI LLP

By: ____/s/ Lisa M. Watanabe-Peagler ____
    AANAND GHODS-MEHTANI
    LISA WATANABE-PEAGLER
    COLIN RUSHOVICH

Attorneys for Plaintiff JOSE VENTURA

- 13 -
COMPLAINT FOR DAMAGES

EXHIBIT A



## Los Angeles County Office of Education

Serving Students ▪ Supporting Communities ▪ Leading Educators

SCANNED

August 13, 2014

**Arturo Delgado, Ed.D.**
Superintendent

**Los Angeles County
Board of Education**

Rebecca J. Turrentine
President

Katie Braude
Vice President

Douglas R. Boyd

José Z. Calderón

Rudell S. Freer

Raymond Reisler

Thomas A. Saenz

Rushovich Mehtani, LLP
Attn: Colin Rushovich
5900 Wilshire Blvd., Suite 2600
Los Angeles, CA 90036

Re:  Government Claim of Jose Ventura

Dear Mr. Rushovich:

Notice is hereby given that the claim which you presented to the Los Angeles County
Office of Education on July 1, 2014 is rejected on August 13, 2014.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice
was personally delivered or deposited in the mail to file a State Court Action on this
claim.  See California Government Code § 945.6.  Your time for filing an action in
federal court may be less than these six months.

In providing this notice, or by any other action it has taken on this claim, the Los
Angeles County Office of Education does not intend to relinquish or waive any of its
legal claims requirements or any rights or defenses potentially available to the Los
Angeles County Office of Education or its officers, directors, employees or agents.

Should you file a lawsuit in this matter which is determined to be in bad faith and
without reasonable cause, please be advised that the Los Angeles County Office of
Education will attempt to recover all of its defense costs from you as allowed by
California Code of Civil Procedure §128.5 and §1038.

If you have any questions about your claim, or this letter, please call the undersigned at
(562) 401-5760.

Sincerely,

Sergio Cazorla, MBA, CSP®
Risk Management Officer

9300  Imperial Highway, Downey, California 90242-2890  (562) 922-6111